WILLIAM H. H. EDWARDS, widower of ALICE O. EDWARDS, deceased, vs. PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY, a corporation of the State of Delaware.

*Negligence—Death—Railroad Crossing—Contributory Negligence —Evidence—Nonsuit.*

1.  Both the traveler and the company are charged with the same degree of care at a crossing to avoid accident, and the care of each must be commensurate with the danger involved.

2.  Whether contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact, must necessarily be controlled by the facts and circumstances of the particular case. (*Queen Anne's R. R. v. Reed,* 5 Penn., 226.)

3.  Contributory negligence may be shown by the evidence of the plaintiff, in the first instance.

4.  Where the evidence, introduced by the plaintiff, clearly shows contributory negligence, on the part of the plaintiff's wife, which was operating at the time and proximately entered into and contributed to the accident, it becomes the duty of the Court, upon motion for nonsuit to direct a nonsuit.

(*November* 19, 1909.)

Judges BOYCE and HASTINGS, sitting.

*Edwin R. Cochran, Jr.*, and *J. Harvey Whiteman* for plaintiff.

*Andrew C. Gray* and *John F. Neary* for defendant.

Superior Court, New Castle County, November Term, 1909.

ACTION ON THE CASE (No. 64, January Term, 1909), to recover damages for death of the plaintiff's wife, alleged to have been caused, through the negligence of the defendant company, by being struck by one of the defendant's passenger trains at a private crossing, known as Lodge's Lane, over the tracks of the defendant company at Binstead, near Wilmington, on the ninth, day of July, 1908.

*Hester Edwards*, the daughter of the plaintiff and the deceased, testified at the trial that she, together with her mother, her sister and four-years old nephew, on July ninth, 1908, boarded a trolley car at Eighteenth and Market Streets, in Wilmington, to go to a Club House at Binstead in Brandywine Hundred, a short distance north of Wilmington, being along the Delaware River and on the east side of the defendant company's railroad tracks; that when the trolley car arrived at Lodge's Lane, a private road leading from the Philadelphia Pike to the Delaware River, across the defendant company's tracks, they alighted from the trolley car and walked down Lodge's Lane in the direction of the Delaware River; that when they got to the railroad they stopped and looked up the track both ways, north and south, and saw no train of cars approaching and heard nothing, although the sight and hearing of the witness were very good; that they then started to walk across the four tracks of the defendant company's railroad—the extreme easterly and westerly tracks being for northbound and southbound passenger trains, respectively, and the two middle tracks being for the northbound and the southbound freight trains;—that her sister and nephew were very close to her, and her mother was a step or two back of the three; that in the direction of Wilmington, toward the south, the view of the railroad tracks was intercepted by a curve and a hedge or

Evidence.

shrubbery of some kind; that they proceeded straight across the tracks at Lodge's Lane and did not look for a train again, and as they were crossing the same she heard no sound or rumble of an approaching train, there being no locomotive whistle blasted, nor bell rung, as they crossed the track, that there was no watchman at the said crossing to warn people and no safety gates or crossing gong, or bell of any kind; that there was no person in any capacity at all around the crossing, except herself and the persons named.

The witness then described the accident as follows:

"Mother was just a step or two back of us. My sister and I crossed the track as near together as we could. We might have been a step or two apart, all of us. We looked down toward the ground as we crossed. The condition of the crossing was very rough. It was filled in between the tracks with sharp broken stone, which was the only footway across the railroad track. The stones were just put in there carelessly between the planks and rails, being just spread around loosely. The first I knew anything about a train of cars having crossed Lodge's Lane crossing, was when we turned within two or three feet of the east rail of the easternmost track, after crossing over the tracks and found that mother was gone. I did not feel any wind from a passing train. We had then just stepped off of the last track, the one next to the Delaware River, and when we looked we could not see her. She was gone, and we looked up the track and could see her body, which I judge was a half square away from Lodge's Lane crossing towards Chester or towards the north. Her body was on the left side of the train between the tracks. I saw the rear end of the train, it was going very fast. When we turned and found mother was gone, the train was almost out of sight."

(*Margaret Edwards*, the sister of the preceding witness, testified to substantially the same facts as above set forth.)

*Frederick C. Mammele* testified that he was acquainted with

Binstead and had been for twenty years, that he had lived there during the summer months in the year 1908; that he knew the location of Lodge's Lane and the extent it was used by the public; that it was used by forty or fifty persons each day, and at all hours of the day; that there were quite a number of summer residences along the shore there; that he was familiar with the defendant's railroad at Lodge's Lane Crossing; that looking from the tracks south towards Wilmington there was a short curve which prevented one standing on the tracks from seeing the approach of a north bound train until it gets very close, but one could hear it; that trains going along there make a noise—could hear the train but not see it; that the curve was some distance towards Wilmington, beyond the Binstead station; that from the curve down to Lodge's Lane the grade of the track is generally on a level, but there is a bank about 8 or 9 feet high on the north side of the railroad, the south side is plainer; that a train going north in the direction of Chester cannot be seen until it gets very close; it can only be heard, that is all.

## CROSS EXAMINATION

*By Mr. Gray:*

Q. You say you cannot see a train before it gets around the curve. Have you any idea how far down you can see a train from Lodge's Lane crossing towards Wilmington? A. Well, there is another lane below there they call Fairmont Avenue Lane; you can just about commence to see it then,—the engine. Q. That is on the northbound track towards the south? A. The northbound track, yes, sir—no; I mean on the southbound track when you are coming across Lodge's crossing you can see the northbound train then just below the station. I should judge that would be about two hundred or three hundred yards towards Wilmington, this way, you could see the engine coming up the northbound track. Q. I show you "Defendant's Exhibit No. 1" being a photograph taken 38 feet west of the western rail of the track nearest the river; that is No. 1 track, on which the northbound trains approach, that being toward the river side,

and that is taken looking towards Wilmington. Do you see the locomotive there coming around the curve? A. Yes, sir. Q. Do you see Binstead Station? A. Yes, sir. Q. Do you know how far Binstead Station is from Lodge's Lane? A. I understand it is about two hundred yards, something like that. Q. How far beyond Binstead Station can you see that approaching locomotive on that No. 1 track nearest the river? A. From the station? Q. No, from Lodge's Lane crossing, where this photograph was taken—how far below Binstead Station can you see the locomotive in this photograph here? A. Between two hundred and three hundred yards. I cannot tell exactly.

### Re-direct Examination.

*By Mr Whiteman:*

R. How far could you see the train from Lodge's Lane crossing? A. About two hundred or three hundred yards.

### Re-cross Examination.

*By Mr. Gray:*

Q. How far below Lodge's Lane crossing did you say Binstead Station was? A. About the same distance, about two hundred to three hundred yards. Q. That would make the locomotive that appears in the photograph No. 1 from four hundred to six hundred yards south of Lodge's Lane crossing? A. Yes, sir.

When the plaintiff rested, counsel for defendant moved for a nonsuit, upon two grounds; *first*, that there had been no negligence shown on the part of the defendant company, and, *second*, that there was contributory negligence shown upon the part of the decedent which was operating at the time of the accident and produced the accident.

After hearing argument of counsel on both sides upon the above motion, the Court rendered the following decision:

BOYCE, J.:—We have given the arguments of counsel for and against the motion for a nonsuit, as well as the evidence pro-

duced by the plaintiff, very careful consideration; and we think, under all the facts and circumstances attending this case, the motion for a nonsuit should prevail. We therefore direct that a nonsuit be entered.

*Mr Whiteman:*—The plaintiff declines to take a nonsuit.

BOYCE, J., charging the jury:

Gentlemen of the jury:—The Court instruct you to return a verdict in this case for the defendant.

Verdict for defendant.